UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEANNE MALEC | ) | CASE NO. 1:18CV1214 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| NANCY A. BERRY HILL, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Deanne Malec Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his September 28, 2017 decision in finding that Plaintiff was not disabled because, based on the ALJ's review of the evidence of record and hearing testimony, the ALJ concluded that Plaintiff was capable of performing light work as defined in 20 C.F.R. § § 404.1567(b) and 416.967(b), with the following limitations: frequently climb ramps or stairs; occasionally climb ladders, ropes or scaffolds; occasionally stoop; frequently kneeling; occasionally crouch; and frequently crawl (Tr. 27). Additionally, the ALJ found she could perform simple tasks in a setting with occasional changes that could be explained or demonstrated, perform goal-oriented work but not work at a production rate pace, and occasionally and briefly interact with supervisors, co-workers, and the public (Tr. 27). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

1

## I. PROCEDURAL HISTORY

On August 26, 2014, the Plaintiff was approved for disability benefits by ALJ Roscoe (Tr. 72). Prior to ALJ Roscoe's favorable decision, Plaintiff's earlier applications were denied, leading her to file an appeal with the United States District Court for the Northern District of Ohio (Tr. 76). The District Court remanded Plaintiff's disability claims on January 8, 2014, to consider the new evidence of a surgical procedure that Plaintiff had undergone to treat her medical impairments (*Id.*).

After the District Court's remand, the claim was reassigned to ALJ Roscoe. Prior to ALJ Roscoe issuing a second opinion, Plaintiff agreed to amend her claim to an application that sought benefits for a closed period of disability (Tr. 79). Specifically, Plaintiff's application was amended to seek benefits for the time period between October 20, 2011 and August 15, 2013 (*Id.*). After the amendment, ALJ Roscoe found that Plaintiff's medical conditions met the requirements of social security disability Listing 1.04A of 20 C.F.R. Part 404, Subpart 1, Appendix 1 (Tr. 80; 20 C.F.R. 404.1520(d) and 404.1525). Because ALJ Roscoe found that the requirements of an SSA "listing" were met, he issued a fully favorable decision, finding Plaintiff disabled from October 20, 2011 until August 15, 2013 (Tr. 76).

Subsequently, on January 14, 2015, Plaintiff filed new and concurrent applications for DIB and SSI under Title II and XVI disability benefits claims (Tr. 86). Her applications alleged a disability onset date of August 16, 2013 (Tr. 87). However, her first date of eligibility for disability benefits is August 27, 2014, the day after the ALJ's prior decision. Plaintiff's applications were denied both initially and upon reconsideration, after which she filed a timely request for another hearing before an AJL (Tr. 137, 138, 154). Plaintiff's disability hearing took place on June 15, 2017, with ALJ Westley presiding (Tr. 45). ALJ Westley issued an unfavorable decision on September 28,

2017 (Tr. 18).

Plaintiff objected to these findings, and filed a timely request for ALJ Westley's decision to be reviewed by the Social Security Administration Appeals Council (Tr. 237). The Appeals Council denied Plaintiff's request for review on April 3, 2018, thereby leaving the ALJ's decision as the final administrative ruling in this matter (Tr. 1-3).

Hence, Plaintiff now seeks judicial review from this Court, filing her claims pursuant to 42 U.S.C. § 405(g) and § 1383(c).

## II. STATEMENT OF THE FACTS

Plaintiff was forty-eight years old on the alleged onset date of her disability, and fifty-two on the date of her disability hearing and ALJ Westley's decision (Tr. 18, 87). Plaintiff resides with her husband, two daughters - ages sixteen and twenty-seven - and her three grandchildren (Tr. 52).

Plaintiff's education includes a high school diploma and two vocational certificates in the field of nursing assistance (Tr. 51, 52). ALJ Westley's decision found Plaintiff's past relevant work history to consist of her employment as a data entry clerk with Amerimark Direct ("Amerimark") from 2003 until 2009 (Tr. 31, 248). The vocational expert testifying at Plaintiff's disability hearing classified this position as semi-skilled in its vocational complexity and sedentary in its exertional requirement (Tr. 31, 32). Plaintiff was ultimately terminated from this position (Tr.54).

Plaintiff is a former smoker (Tr. 312). The record indicates that Plaintiff has a history of cannabis use, with the last recorded date of use being in July of 2013 (Tr. 392, 393). This is over two years before Plaintiff filed the application for disability benefits now before this Court (Tr. 392, 393). During the alleged period of disability, Plaintiff alleges that she has neither smoked, nor consumed alcohol or any illicit substances (Tr. 617).

## III. SUMMARY OF MEDICAL EVIDENCE

### A. Physical Health History.

Plaintiff has a history with symptoms arising out of her diagnosed degenerative disc disease and scoliosis conditions that affect her lumbar spine (Tr. 308, 321). In the fall of 2011, Plaintiff's spine was imaged using x-rays at Cleveland Clinic's main campus (Tr. 325). The results reflected abnormalities in Plaintiff's lumbar, as well as thoracic, spine (Tr. 325). The results of the x-rays were interpreted by Plaintiff's treating neurologist, Dr. Bell (*Id.*) to show a twenty-four inch long, left leaning, convex curve, which spanned all the way from the top of the thoracic, down to the bottom of the lumbar spine (*Id.*). The same imaging also revealed facet hypertrophy and spinal stenosis at L4-L5, as well as herniating discs and neural foramen narrowing at the L5-S1 (*Id.*).

Plaintiff claims that she has symptoms caused by Plaintiff's conditions, which include chronic pain, which also radiculates together with sensations of numbness, pressure, and tingling, down Plaintiff's back and down through both of her lower extremities (Tr. 317, 318, 325), and worse in her left leg (Tr. 317).

Until the fall of 2011, the symptoms of Plaintiff's spine disorders were treated with prescription medication and branch blocks-spinal injections designed to treat the nerve pain that traveled down Plaintiff's legs (Tr. 308). Plaintiff alleges that these treatment methods failed to provide Plaintiff adequate relief for her chronic pain (Tr. 299, 300, 316, 317). Plaintiff consulted with her neurologist, Dr. Bell, who recommended surgery (Tr. 325). Plaintiff agreed to undergo a complex surgical operation in an effort to alleviate her chronic pain (Tr. 299, 325). The surgery was performed by Dr. Bell at the Cleveland Clinic's Main Campus at the end of 2011 (Tr. 299, 300, 316, 317, 362). The surgery comprised of several procedures: a laminectomy, a decompression facetectomy, and a

foraminotomy (Tr. 299, 300, 317). These procedures specifically targeted the L4-L5 and L5-S1 discs in Plaintiff's lumbar spine, areas that x-ray imaging had found to be most affected (Tr. 299, 300, 325).

Plaintiff reported to her doctors at Cleveland Clinic that the surgery had failed to offer sufficient relief of her pain (Tr. 492). By April of 2013, Plaintiff's back and leg pain had begun to improve (Tr. 395). While she reported an improvement with her pain, Plaintiff claimed that she continued to experience weakness, numbness, and a burning sensation in her left leg (Tr. 440). In addition to these symptoms, Plaintiff experienced some falls (*Id.*). Plaintiff continued to receive ongoing treatment for her back and lower legs.

After her surgery, Plaintiff's back was treated with several rounds of epidural injections, she attempted physical therapy, and she was prescribed medications (Tr. 477-488). The medications included the narcotic pain medication Tramadol, and the nerve pain medication, gabapentin (Tr. 486). The diagnosis of Plaintiff's back condition was updated to include lumbago, acquired spondylosthesis, and lumbar stenosis with neurogenic claudication (Tr. 638).

In April of 2014, a few months prior to the alleged onset date, Plaintiff reported to her treating physicians at Cleveland Clinic that she felt discomfort with any prolonged postural activity (Tr. 395). Plaintiff continued to experience falls as a result of her legs "giving up" on her (*Id.*). Because these symptoms returned to their pre-surgery levels, she underwent further imaging of her back in the spring of 2014. An x-ray of Plaintiff's thoracic spine indicated mild curvature with a convex to the left and multi-level degenerative changes throughout (Tr. 509). An x-ray of the lumbar spine also reflected the left convex curvature, along with scoliosis and a left side down pelvic tilt and L1-2 mild retrolisthesis and narrowing (*Id.*).

Plaintiff underwent a functional capacity evaluation at Cleveland Clinic's Rehabilitation and Sports Therapy Department in April of 2014 (Tr. 396). As a part of this evaluation, she reported her postural capacity as limited to sitting for fifteen minutes, standing for ten minutes, and walking for a half block without interruption (Tr. 397). The evaluation, conducted by a physical therapist, Mr. James McDonald, noted limitations in the range of motion of Plaintiff's lumbar and cervical spine, as well as her shoulders (*Id.*). As a part of the evaluation, Plaintiff also completed a set of exercises that included transitioning from sitting to standing, lifting objects from various heights, and standing and ambulating in various ways (Tr. 396-398). The study concluded that Plaintiff was limited to work in the sedentary/light range (Tr. 398).

In May of 2014, a barium swallow test revealed a "large paraesophageal" hernia that was inoperable due to Plaintiff's body weight (Tr. 394). In November of 2014, during a follow-up visit with the Cleveland Clinic, Plaintiff stated that she was experiencing back and joint pain, in addition to muscular weakness, migraines, and nocturnal cramping (Tr. 390). These symptoms continued to be treated with Tramadol and Gabapentin, medications that Plaintiff's physicians at Cleveland Clinic ordered for her to take up to three times each day (Tr. 387).

While Plaintiff continued to receive treatment for her back through 2015, her conditions continued relatively unchanged (Tr. 632). In August of 2015, Plaintiff's physical health was evaluated by Dr. Darius Saghafi as a part of her application for disability benefits (Tr. 624). Dr. Saghafi's evaluation did not find any deficits in Plaintiff's muscle strength (Tr. 625). However, he assessed Plaintiff's capacity for lifting as limited to five to ten pounds (Tr. 626). Dr. Saghafi also found Plaintiff exhibited a full range of motion with respect to all joints and body parts, except her lumbar spine (Tr. 629, 630). The evaluation also found Plaintiff's capacity for standing and walking as limited to ten minutes (Tr. 626). Dr. Saghafi concluded his examination by finding Plaintiff to be

"a poor candidate for heavy physical labor," but can "at least as likely as not handle light duty seated type work for at least four hours daily" (*Id.*).

  B. <u>Mental Health History</u>

Plaintiff has a history with symptoms from depression and anxiety. These two diagnosed impairments were treated with psychotherapy and a variety of medications during the years leading up to the current alleged period of disability (Tr. 333). Since 2012, Plaintiff's mental health conditions have been treated at the Center for Families and Children, where she attended therapy sessions (Tr. 370-375).

In August of 2014, the treatment notes from Plaintiff's treatment providers at the Center for Families and Children indicate that she had made only "minimal progress" towards the treatment goals (Tr. 602). At the time, Plaintiff's diagnoses included a "recurrent" major depressive disorder, a "severe" generalized anxiety disorder, as well as a bipolar disorder (Tr. 602, 607). To treat these impairments, Plaintiff was being prescribed the anti-depressants Amitriptyline and Wellbutrin, and the anti-anxiety medication Xanax (Tr. 602). In May of 2015, Plaintiff reported to her treatment providers at Center for Families and Children that her depression was worsening due to her ongoing concerns over her husband's health (Tr. 610). In response, her treating psychiatrist, Dr. Hunt, increased the dosage of Plaintiff's Wellbutrin (Tr. 611).

In August of 2015, Dr. Hunt provided an evaluation of Plaintiff's mental functioning (Tr. 617-621). The assessment identified Plaintiff's diagnosed mental impairments consisting of a bipolar type II disorder, generalized anxiety disorder, and a personality disorder (Tr. 618). Dr. Hunt's evaluation described Plaintiff presenting as "blunted, anxious, and tearful" (Tr. 617). The evaluation found the symptoms of Plaintiff's mental impairments as having a great effect on her functioning. Dr. Hunt noted that Plaintiff's concentration was "impaired," and rated her capacity for social interactions and

ability to adjust to environmental changes as "poor" (Tr. 617, 618). When discussing these limitations, Dr. Hunt wrote, "she has a limited ability to adjust to changes in environment," a "limited social system." and "has been unable to work many years due to mood, anxiety" (Tr. 618).

The second part of Dr. Hunt's evaluation provided a more detailed assessment as to how Plaintiff's conditions would affect specific areas of functioning which are required in an employment setting. Dr. Hunt found Plaintiff as not able to maintain attention and concentration for extended periods of two hour segments, deal with public, interact with supervisor(s), or to complete a workday and workweek without interruption from psychologically-based symptoms (Tr. 620). Dr. Hunt also assessed Plaintiff as occasionally having the ability to "understand, remember, and carry out ... detailed job instructions, behave in an emotionally stable manner, relate to co-workers, work in coordination or proximity to others without being distracted, or to deal with work stress (Tr. 620, 621).

In October of 2015, Plaintiff's mental functioning was assessed by Dr. Davis, a consultative examiner (Tr. 644). Dr. Davis, in his report, notes that Plaintiff was answering questions in a slow, tangential manner, and her attention to express herself manifested fragmented ideas and reasoning (Tr. 646). Dr. Davis also found Plaintiff to be having difficulty performing tasks that required her to remember information or to perform simple arithmetic calculations, which she found to indicate limitations in abstract reasoning, logical thinking, and judgment (Tr. 647). Dr. Davis' evaluation diagnosed Plaintiff with an adjustment disorder with depressed mood and anxiety (Tr. 649). In conclusion, Dr. Davis found Plaintiff limited to performing work that only requires the performance of simple tasks (*Id.*). Dr. Davis' opinion questions whether Plaintiff is able to sustain work limited to simple tasks, specifically due to her limited capacity for tolerating stress and getting along with supervisors (*Id.*). Dr. Davis' evaluation ends by concluding that during Plaintiff's last job, she had

8

"difficulties dealing with the pressures and stresses of her employment near the end," and now her "anxiety and depression" are only "worsening" (*Id.*).

Plaintiff continued to receive mental health treatment from the Center for Families and Children through 2015 and 2016, with the treatment records largely exhibiting unchanged symptoms of depression and anxiety (Tr. 657, 666, 682).

IV. <u>SUMMARY OF TESTIMONY</u>

At the June 2017 administrative hearing, Plaintiff testified that she had two technical certificates, in medical assisting and nursing assisting (Tr. 52). She stated that she lived with her husband and their two daughters and grandchildren (Tr. 52). She stated that, due to her husband's medical issues, she helped him go to doctor appointments, get washed up, and change his clothes (Tr. 54). She ordered meals with funds from her husband's income (Tr. 54). Her daughters assisted with cleaning and grocery shopping (Tr. 54, 66).

Plaintiff stated that she took prescribed medications for depression that helped but made her sleepy (Tr. 55, 56). She was also receiving therapy for a while, but did not continue (Tr. 56-57). She testified that she had sciatic nerve pain that went down her leg, and herniated discs (Tr. 58). She also reported having a sleeping disorder (for which she took Ambien), and did not drive as a result (Tr. 58, 64). She stated that she could not stand for long periods of time (fifteen minutes) or walk for twenty minutes at a time, due to fatigue (Tr. 59-60). She also testified that she took Xanax for panic attacks that happened daily (Tr. 63).

A vocational expert (VE) Paula Zinsineister also testified at the hearing (Tr. 67). The ALJ posed a hypothetical question that assumed an individual of the same age, education, and vocational profile as Plaintiff, who could perform light work (as defined in 20 C.F.R. § § 404.1567(a), 416.967(a)), who could: frequently climb ladders, ropes, or scaffolds; occasionally crouch; frequently

9

crawl; perform simple tasks in a setting with occasional changes that can be explained or demonstrated; can perform goal-oriented work; but cannot work at a production rate pace; and can occasionally and briefly interact with supervisors, co-workers, and the public (Tr. 68).

The VE testified that such an individual could perform jobs such as the following in the national economy: cleaner/housekeeper (150,000 positions in national economy); merchandise marker (300,000 positions), and cafeteria attendant (100,000 positions) (Tr. 69).

## V. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits and supplemental security income. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *See* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward

with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## VII. ANALYSIS

Plaintiff asserts one assignment of error:

WHETHER THE ALJ ERRED BY REJECTING THE FINDINGS CONTAINED IN THE MEDICAL OPINIONS OF THE CLAIMANT'S TREATING PHYSICIAN AND SSA'S CONSULTATIVE EXAMINERS.

11

Plaintiff contends that the ALJ did not offer good reasons for the weight he assigned to the opinion of her treating psychiatrist, Dr. Hunt. Pl's Br. at 12. Her argument is not supported by the record.

The opinion of a treating source is entitled to controlling weight only when it is supported by medically acceptable clinical and laboratory diagnostic results, and it is not inconsistent with other objective evidence. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see, also* 20 C.F.R. § 416.927(d)(2). When the ALJ does not give controlling weight to a treating physician's opinion, he should explain what weight he assigned it after considering: (1) length of the treatment relationship and frequency of examinations; (2) nature and extent of the treatment relationship; (3) the relevant evidence that the treating physician relies upon; (4) the consistency of the opinion with the record as a whole; and (5) specialization of the treating physician. 20 C.F.R. § 404.1527(d)(1)-(5). The ALJ's reasoning should be clear so that a reviewing court could understand the weight assigned to the opinion and the rationale behind that assignment. *See, Wilson*, 378 F.3d at 544; 20 C.F.R. § 416.927(d); SSR 96-2p, 61 Fed. Reg. 344,489-34,492 (July 2, 1996).

In this case, the ALJ reviewed all of the medical opinions of record and gave reasoned explanations for the weight assigned to them (Tr. 29-31). He noted each doctor's specialization area, noted their treatment history (including length and frequency), the nature of the treatment provided, and the supportability of their opinions (Tr 19-31).

In regard to Dr. Hunt's 2015 opinion, the ALJ explained that he assigned it little weight (Tr. 29). He stated that this opinion was not consistent with the other evidence as a whole, that supported moderate limitations (Tr. 29). He noted that Dr. Davis diagnosed adjustment disorder with mixed anxiety and depressed mood, and opined that she had the ability to understand, remember and carry out simple instructions (Tr. 30, 648-649). The ALJ also noted that, according to Dr. Davis, she could

12

care for her personal needs, and kept up her appearance (Tr. 30, 648). He noted that, according to Dr. Saghafi, Plaintiff could understand the environment as well as peers, communicate satisfactorily and travel independently (Tr. 30, 626). The ALJ noted that she was able to perform her activities of daily living, manage household funds, and care for her husband, who had health issues (Tr. 30, 31).

The ALJ was correct in assigning little weight to Dr. Hunt's conclusory and unsupported opinion. *See,* 20 C.F.R. § 404.1527(d)(3); *Prive v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175-76 (6th Cir. 2009) ("Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion."). The ALJ stated that he assigned great weight to the opinions of the state reviewing psychologists, Drs. Edwards and Johnston, who reviewed all of the records in October 2015 and January 2016 (Tr. 30-31). Dr. Edwards opined that Plaintiff could remember and understand simple one-step job tasks that are low stress, could have brief and conventional communication with supervisors and co-workers, and would do best in a relatively static work environment where change is infrequent and could be shown or explained to her (Tr. 99-101, 116-118). Dr. Johnston reviewed Plaintiff's file on January 16, 2016 and affirmed Dr. Edwards' opinion (Tr. 132-133, 149-151).

Plaintiff alleges that the ALJ erred in discounting the weight he assigned to the opinions of consultative examiners, Drs. Davis and Saghafi. Pl's Br. at 17-20. This argument is not supported by the record. The determination of disability, ultimately, is the Commissioner's prerogative, not the treating physician's. *See, Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The ALJ should not assign significant weight to any medical opinion that is not properly supported by clinical or examination findings, or inconsistent with other medical evidence of record. *See, White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc).

Dr. Davis performed a consultative psychological evaluation on October 8, 2015 (Tr. 644). He noted that Plaintiff was oriented to person, place, time, and situation (Tr. 650). She presented with a slightly dull to depressed affect (Tr. 650). Intellectually, she appeared to be somewhat limited (Tr. 650). Dr. Davis diagnosed adjustment disorder with mixed anxiety and depressed mood, and opined that she had the ability to understand, remember, and carry out simple instructions (Tr. 648-649).

The ALJ assigned Dr. Davis' opinion little weight, finding that it was not consistent with other evidence in the record (Tr. 30). He specifically stated that Plaintiff was able to perform activities of daily living, manage her funds, and take care of her ailing husband (Tr. 30). He observed that even Dr. Davis noted that although she was somewhat restricted in her daily activities because of physical problems, she did those things that needed to be done at her pace (Tr. 301, 650). Dr. Davis also noted that she could take care of her personal needs, and her appearance was decent (Tr. 650). Plaintiff stated she could have trouble relating satisfactorily to other people, but basically, she got along with most people most of the time (Tr. 650). As the ALJ noted, she presented with some limitations in her ability to think logically and use common sense and judgment, but Dr. Davis noted that she paid attention and concentrated during the evaluation and could perform simple tasks (Tr. 30, 650). Based upon the record, the ALJ correctly assigned little weight to Dr. Davis' opinion.

The ALJ also assigned lesser weight to Dr. Saghafi's August 2015 opinion that she was a poor candidate for heavy physical labor, but she could at least handle light duty seated type of work at least four hours daily (Tr. 30, 626). Dr. Saghafi further opined that Plaintiff was able to lift, push and pull sufficiently to be able to perform activities of daily living and lift and carry up to five to ten pounds for short distances and durations of time (Tr. 626). She was poorly able to bend, walk, and stand for up to ten minutes (Tr. 626). He concluded that she was able to understand the environment as well as peers and communicate satisfactorily and able to travel independently (Tr. 626).

The ALJ explained that this opinion was not a function-by-function assessment of the most that Plaintiff could do, and was a vague statement (Tr. 30). *See, Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 n.3 (6th Cir. 2009). The ALJ also noted that she could travel independently, understand her environment and peers, and communicate satisfactorily (Tr. 30).

Reviewing other evidence, the ALJ noted that the internal medicine consultative examinations indicated she had normal strength, intact sensation, and normal gait (Tr. 31, 625-626, 635). He noted that no treating medical provider had opined that she could not perform at a light exertional level (Tr. 31). He assigned greater weight to the 2016 opinion of state reviewing physician Dr. Lewis, who opined that Plaintiff could perform light work with occasional climbing of ladders, ropes or scaffolds, and only occasional stooping and crouching (Tr. 31, 130-131, 147-148).

In conclusion, the ALJ correctly considered the medical opinions of record, and, therefore, assigned the proper weight to them.

A court's review of the Commissioner's factual findings for substantial evidence must consider the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). However, there is no requirement that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F.App'x 521, 526 (6th Cir. 2006); *Kornecky v. Comm'r of Soc. Sec.*, 167 F.App'x 496, 508 (6th Cir. 2006). Because substantial evidence supports the ALJ's evaluation of the evidence, the Court affirms the ALJ's decision that Plaintiff was not disabled.

## VIII. CONCLUSION

Based upon a review of the record as a whole and the law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional

capacity (RFC) to perform light work as defined in 20 C.F.R. § § 404.1567(b) and 416.967(b), and that there were significant numbers of jobs in the national economy that she could perform despite any of her impairments, and, therefore, she is not disabled. Hence, she is not entitled to DIB and SSI.

Dated: May 6, 2019  */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE